FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 JUL 26 P 2: 55

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

LESTER G. DALLAS,                          )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )        CIVIL ACTION NO.: CV203-177
                                           )
JO ANNE B. BARNHART,                       )
Commissioner of Social Security,           )
                                           )
            Defendant.                     )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Alan L. Bergstrom ("the ALJ" or "ALJ Bergstrom") denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income payments on October 4, 2001, alleging that he became disabled on December 1, 2000, due to back problems and numbness in his arms and legs. (Tr. at 62.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On January 14, 2003, ALJ Bergstrom held a hearing at which Plaintiff

appeared and testified. James S. Waddington, a vocational expert, also testified at this hearing. ALJ Bergstrom found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 12.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3.)

Plaintiff, born on August 28, 1953, was forty-nine (49) years old when ALJ Bergstrom issued his decision. He has a high school education. (Tr. at 13.) His past relevant work experience includes employment as a pulper, construction worker II, grinder, cleaner, and landscape laborer. (Id.)

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed.2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404,

Subpt. P. App. 1; Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to perform other work in the national economy, considering his age, education, and work experience. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of December 1, 2000, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 13.) At Step Two, the ALJ determined that Plaintiff had degenerative disc disease of the cervical and lumbar spine, which is an impairment considered severe within the Act. (Id.) However, the ALJ also determined that Plaintiff's medically determinable impairment did not meet or medically equal a listed impairment. (Id.) The ALJ found that Plaintiff retained the residual functional capacity to perform the demands of light exertional work. ALJ Bergstrom specifically found that Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in 1 hour intervals during an 8-hour workday; sit an entire workday; and was limited bilaterally in the ability for repetitive pushing and pulling in the upper extremities. The ALJ also found that Plaintiff should avoid climbing ropes, ladders, and scaffolds, and should be frequently limited in other forms of climbing, crawling, kneeling, crouching, stooping, and balancing. ALJ Bergstrom further found that Plaintiff was frequently limited bilaterally in

3

overhead reaching, cold temperature extremes, and wet/highly humid workplaces; Plaintiff also should avoid exposed heights and concentrations of vibration in the workplace to neck, back, and rough terrain. The ALJ noted due to medication side effects and perceived pain, Plaintiff was frequently limited to complex tasks and instructions and was occasionally limited to detailed tasks and instructions. (Tr. at 15.) At the next step, ALJ Bergstrom concluded that Plaintiff could not perform his past relevant work because these jobs exceeded the light exertional level and that Plaintiff had no transferrable skills from any past relevant work. Finally, the ALJ noted that there were a significant number of jobs in the national economy that Plaintiff could perform.

## ISSUE PRESENTED

Plaintiff asserts[1] that the ALJ erred in finding him not disabled because this decision is not supported by substantial evidence.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Cornelius, 936 F.2d at 1145. Even if the

---

[1] Plaintiff asserts a variety of allegations of error on the part of the ALJ. For instance, Plaintiff contends that the ALJ did not have a sufficient basis to reject the opinion of a treating physician that Plaintiff is disabled. Plaintiff also contends that the ALJ failed to make express credibility determinations or to state a sufficient reason for rejecting Plaintiff's subjective complaints of pain. Plaintiff further contends that the hypothetical questions the ALJ asked the vocational expert were deficient because the ALJ did not include all of Plaintiff's impairments.

4

evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id. at 1145; Martin, 894 F.2d at 1529.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Martin, 894 F.2d at 1529; Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146; Martin, 894 F.2d at 1529.

## DISCUSSION AND CITATION OF AUTHORITY

I.    **The ALJ's Determination That Plaintiff is not Disabled is Supported by Substantial Evidence.**

Plaintiff contends that the evidence of record "demands a finding that" he is entitled to an award of disability benefits. (Pl.'s Br., p. 1.) Plaintiff asserts that the ALJ did not have a "sufficient basis to reject the [treating] doctor's opinions that [he] was disabled." (Pl.'s Br., p. 7.) Plaintiff also asserts that ALJ Bergstrom failed to make express credibility determinations, which were crucial, which requires that the case be remanded for further consideration at the administrative level. Plaintiff alleges that the ALJ did not provide a sufficient reason for rejecting his opinion regarding his pain. Finally, Plaintiff contends that the hypothetical questions ALJ Bergstrom presented to the vocational expert were

5

AO 72A
(Rev. 8/82)

deficient, "which means . . . that there was no proof of other suitable work the Plaintiff was capable of performing." (Pl.'s Br., p. 9.)

## A.    The Medical Evidence of Record.

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F.2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

In reaching his conclusion that Plaintiff was not disabled, ALJ Bergstrom reviewed the medical evidence of record. ALJ Bergstrom noted that Dr. Joe Nettles examined Plaintiff on April 3, 1998, and reported that Plaintiff was doing well with his back since he had a fusion 18 to 20 years prior until he slipped and fell onto his back. The ALJ also noted that Dr. Nettles' examination of Plaintiff revealed tightness of the right trapezius muscle, but there was no neurological deficit in his neck or lower back. Plaintiff's straight leg raising increased the pain in his lower back at approximately 60 degrees on the left and 70 degrees on the right. ALJ Bergstrom observed that Plaintiff's X-rays showed a good solid fusion of the L4 to the sacrum and some degenerative change in the sixth cervical disc space with some slight straightening about the normal cervical lordosis in that area.

6

ALJ Bergstrom noted Dr. Nettles' impression was lumbosacral strain with reactive muscle tightness in the neck. (Tr. at 13, 104-05.)

The ALJ also noted that Dr. Wayne Woodbury examined Plaintiff on March 23 and May 23, 2001. Dr. Woodbury reported that Plaintiff had no limitations in his activities as to his back and was not taking any medications although Plaintiff claimed that he sprained his back from time to time. ALJ Bergstrom stated that Plaintiff's MRI scan of C6-7 showed spondylosis with disc bulging, neural foraminal narrowing, and an L3-4 stenosis. The ALJ noted Dr. Woodbury's opinion that there were "multiple underlying issues at play regarding [Plaintiff's] injury." (Tr. at 13.) The ALJ also noted that Plaintiff's cervical range of motion was nearly normal; he had minimal pain objectively; there were no focal neurological deficits assessed in the upper extremities at that juncture; and his reflexes were 2+ and symmetric. ALJ Bergstrom observed that Dr. Woodbury's impressions were a work related injury with what appeared to be primarily muscle strain of both the cervical and lumbar spine, C6-7 spondylosis, and L3-4 stenosis. (Tr. at 13, 111.)

ALJ Bergstrom next noted that Dr. von Hessler gave Plaintiff a comprehensive evaluation and examination. Dr. von Hessler noted that Plaintiff was "oriented times three", and there was no evidence of retardation or of significant depression. (Tr. at 13.) The ALJ observed Dr. Von Hessler's opinion that Plaintiff could sit without difficulty and in fact, could sit, stand, and/or walk for 8 hours in an 8 hour workday with normal breaks. Dr. von Hessler observed that Plaintiff could sustain position and postures for an extended period of time, did not unduly shift positions during the examination, could get up from a chair, and got off and on the exam table without difficulty. The ALJ also observed that Plaintiff could lift and carry with some difficulty, but could lift and/or carry 40 pounds occasionally and 20

7

pounds frequently. The ALJ further observed that Plaintiff could climb, balance, stoop, kneel, and crawl occasionally and was capable of reaching, pushing, pulling, grasping, and fingering on a sustained basis. ALJ Bergstrom stated that Plaintiff could handle, finger, feel, and reach overhead in all directions constantly and could see, hear, and speak without difficulty. The ALJ also stated that Plaintiff could perform fine and gross manipulations to effectively feed himself, take care of personal hygiene, and dress and undress. ALJ Bergstrom noted that Plaintiff could sort and handle papers and place them in a file cabinet, had the dexterity to use a computer keyboard, button clothes, and tie shoelaces. Plaintiff could also tolerate environmental factors such as heights, machinery, noise, vibration, humidity, fumes, dust, heat, cold, and rain. The ALJ also noted that Plaintiff would have no difficulty maintaining concentration, attention to tasks, remembering and following simple and complex instructions, interacting with others (supervisors and/or the public), or adhering to some work schedule and production norms. ALJ Bergstrom further noted Dr. von Hessler's diagnoses of unspecified cervical pain with decreased range of motion, bilateral upper extremity radiculopathy, status post old lumbar fusion, and unspecified low back pain. (Tr. at 14, 140.)

It appears that Plaintiff contends that Dr. McAllister was his treating physician. In this regard, Plaintiff asserts that ALJ Bergstrom "made no mention of the lumbar stenosis noted by both Dr. Horn and Dr. McAllister. The [ALJ] said that there was no medical evidence to support the Plaintiff's claims of right upper extremity hand problems, (R-15), which is totally contradicted by the report of Dr. McAllister." (Pl.'s Br., pp. 5-6.) However, a review of the record before this Court indicates that Plaintiff saw Dr. McAllister on only one occasion– August 2, 2001. (Tr. at 156-60, 198.) Because Dr. McAllister did not

AO 72A
(Rev. 8/82)

provide ongoing treatment for Plaintiff, his opinion is not entitled to the increased deference based on his position as a treating physician. See Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (noting that the opinion of a treating physician is given deference because of his familiarity with a patient over a considerable length of time). In addition, while Dr. McAllister's notes indicate that Plaintiff had stenosis, he was unsure of its extent and whether surgery was necessary. (Tr. at 160.) Further, the Court was unable to find anything in Dr. McAllister's notes which "totally contradicted" ALJ Bergstrom's observation regarding Plaintiff's claims of right upper extremity problems; at best, Dr. McAllister noted that Plaintiff was diffusely weak in the upper extremities but was especially weak in his grip strength. (Tr. at 158.) Even if Dr. McAllister could be considered Plaintiff's treating physician, the ALJ stated that he gave controlling weight to the opinions of the State Agency medical consultant and Dr. von Hessler, a consultative examiner, because their opinions were consistent with the medical evidence and the other substantial evidence of record. (Tr. at 15.) Thus, ALJ Bergstrom had "good cause" not to give Dr. McAllister's opinion "substantial weight." See Edwards, 937 F.2d at 583.

### B.     Plaintiff's Testimony was not Wholly Credible.

ALJ Bergstrom also noted Plaintiff's testimony at the evidentiary hearing. Plaintiff testified that he had back surgery 20 years ago and sustained an injury in 2000 while he was working at a truck stop. Plaintiff also testified that he constantly had pain in his back and legs, and that it hurt to move and turn his neck. Plaintiff stated that his arms felt like they were going numb and that he dropped things quite often. Plaintiff also stated that his leg gave out, which caused him to fall and break his fingers. Plaintiff testified that he could walk 30 to 40 minutes but the pain would increase in his legs. Plaintiff also testified that

9

the more active he was, the more he was in pain and had to take more medications to help him sleep. (Tr. at 15, 188-92, 197.)

In reviewing Plaintiff's testimony, ALJ Bergstrom noted that there was "no medical evidence or opinion to support Plaintiff's claim of right upper extremity hand problems limiting to sedentary lifting." (Tr. at 15.) The ALJ also noted that Plaintiff's "movement on examines [was] not as limited as claimed. Based on the objective medical evidence, [Plaintiff's] testimony and exhibit 8E, the undersigned finds [Plaintiff's] allegations of disabling symptoms and pain not consistent with the medical evidence of record." (Id.) Plaintiff contends it is unclear as to what the ALJ meant by these statements. (Pl.'s Br., p. 6.) However, it appears that ALJ Bergstrom did not find Plaintiff's claims of limitations and disabling symptoms and pain wholly credible, as these allegations, in the ALJ's view, were not consistent with the objective medical evidence. In so doing, ALJ Krantz noted that he considered Plaintiff's subjective complaints of pain, as required by Social Security Ruling 96-7p. "Although [courts in] this circuit do[ ] not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As stated above, ALJ Bergstrom did not find Plaintiff's testimony and allegations of pain to be consistent with the objective medical evidence, and, contrary to Plaintiff's assertion, this is a sufficient reason to reject Plaintiff's opinion regarding his pain. Additionally, although the ALJ did not make a specific finding as to Plaintiff's credibility, the "implication" that he did not find Plaintiff's testimony to be entirely credible is "obvious" to the Court. See id. (also noting that no particular phrases or formulations need be used in making a credibility determination but it must not be merely a broad rejection of a claimant's testimony).

10

## C.    The ALJ's Use of a Vocational Expert.

In addition, ALJ Bergstrom used the Medical-Vocational Guidelines as a framework in deciding whether Plaintiff was disabled because Plaintiff could not perform a full range of work at the light exertional level. Based on his finding that Plaintiff could perform a significant range of work at the light exertional level, ALJ Bergstrom elicited the aid of James S. Waddington, a vocational expert, to help him determine whether there were a significant number of jobs in the national economy that Plaintiff could perform given his residual functional capacity and other vocational factors. The ALJ asked the vocational expert whether jobs existed in the national economy for an individual of Plaintiff's age, education, past relevant work experience, and determined residual functional capacity. (Tr. at 16.) ALJ Bergstrom noted the vocational expert's testimony that, assuming the hypothetical individual's specific work restrictions, he was capable of making a vocational adjustment to other work. (Tr. at 16.) The vocational expert testified that, given all of these factors, Plaintiff could work as a: mail clerk, which is unskilled, light exertional work; cashier II, which is unskilled, light exertional work; security guard, which is semi-skilled, light exertional work; and surveillance system monitor, which is unskilled, sedentary work. (Tr. at 16-17, 206.) ALJ Bergstrom concluded that Plaintiff was capable of successfully adjusting to work which existed in significant numbers in the national economy, based in large part on the vocational expert's testimony. (Tr. at 17.)

Generally, after a claimant's residual functioning capacity and ability (or inability) to return to his past relevant work are determined, "the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). Nonetheless, when a claimant

11

AO 72A
(Rev. 8/82)

is 'unable to perform a full range of work at a given residual level *or* when a claimant has non-exertional impairments that significantly limit basic work skills[,] exclusive reliance on the grids is not appropriate.'" Id. (quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)(emphasis in original)). If either of these conditions is present, the ALJ is required to consult a vocational expert. Id. Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

Plaintiff's assertion that the hypothetical posed to the vocational expert was deficient is without merit. The ALJ did not include Plaintiff's alleged impairments due to the medications he was taking in the hypothetical questions posed to the vocational expert, but he was not required to do so if he found Plaintiff's alleged impairments as being not true. See id. Nonetheless, ALJ Bergstrom allowed Plaintiff's attorney to pose the question to the vocational expert regarding Plaintiff's medications. (Tr. at 209.) Although the vocational expert stated that Plaintiff could not maintain employment due to the side effects of his medication (Tr. at 210), this does not mean that ALJ Bergstrom had to accept Plaintiff's limitations in this regard as true or include them in the hypothetical posed to the vocational expert.

12

In sum, ALJ Bergstrom's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial evidence. Additionally, it appears that ALJ Bergstrom followed the appropriate legal standards in reaching his decision.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 26th day of July, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

13